AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia



FILED

SEP 1 8 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA. VIRGINIA

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>IN THE MATTER OF THE SEARCH OF INFORMATION<br>ASSOCIATED WITH TWITTER PROFILE WITH USERNAME<br>@WILLWEAVER2 AT HTTPS://TWITTER.COM/<br>WILLWEAVER2 THAT IS STORED AT PREMISES<br>CONTROLLED BY TWITTER | )<br>)<br>)<br>)<br>)<br>) |

Case No.  1:17-SW-604

**Filed Under Seal**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 844(e) | Transmission of Interstate Threats Involving Explosives |
| 18 U.S.C. 875(c) | Interstate Communication of Threats to Injure |
| 18 U.S.C. 1038 | Conveyance of False Information and Hoaxes |
| 18 U.S.C. 2332(a) | Threatening Use of Weapon of Mass Destruction Against Person or Property |

The application is based on these facts:

See Attached Affidavit (incorporated by reference)

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sarah Thaden, Special Agent, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  18 Sep 17

City and state:  Alexandria, Virginia

_____ /s/ _____
Ivan D. Davis
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Twitter profile with username @WILLWEAVER2 at HTTPS://TWITTER.COM/WILLWEAVER2 that is stored at premises owned, maintained, controlled, or operated by Twitter, Inc. ("Twitter"), a company headquartered in San Francisco, California.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be disclosed by Twitter, Inc. ("Twitter")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Twitter, including any messages, records, files, logs, or information that have been deleted but are still available to Twitter, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Twitter is required to disclose the following information to the government for each account listed in Attachment A:

a.  All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b.  All past and current usernames, account passwords, and names associated with the account;

c.  The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.  All IP logs and other documents showing the IP address, date, and time of each login to the account;

e.  All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

f.  All "Tweets" and Direct Messages sent, received, "favorited," or retweeted by the account, and all photographs or images included in those Tweets and Direct Messages;

g.  All information from the "Connect" tab for the account, including all lists of
Twitter users who have favorited or retweeted Tweets posted by the account, as
well as a list of all Tweets that include the username associated with the account
(*i.e.*, "mentions" or "replies");

h.  All photographs and images in the user gallery for the account;

i.  All location data associated with the account, including all information collected
by the "Tweet With Location" service;

j.  All information about the account's use of Twitter's link service, including all
longer website links that were shortened by the service, all resulting shortened
links, and all information about the number of times that a link posted by the
account was clicked;

k.  All data and information that has been deleted by the user;

l.  A list of all of the people that the user follows on Twitter and all people who are
following the user (*i.e.*, the user's "following" list and "followers" list);

m.  A list of all users that the account has "unfollowed" or blocked;

n.  All "lists" created by the account;

o.  All information on the "Who to Follow" list for the account;

p.  All privacy and account settings;

q.  All records of Twitter searches performed by the account, including all past
searches saved by the account;

r.  All information about connections between the account and third-party websites
and applications;

s.  All records pertaining to communications between Twitter and any person

regarding the user or the user's Twitter account, including contacts with support services, and all records of actions taken, including suspensions of the account.

**II.**    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 844(e) (Transmission of Interstate Threats Involving Explosives), 18 U.S.C. § 875(c) (Interstate Communication of Threats to Injure); 18 U.S.C. § 1038 (Conveyance of False Information and Hoaxes); and 18 U.S.C. § 2332(a) (Threatening Use of a Weapon of Mass Destruction Against a Person or Property within the United States or against Property that is Owned, Leased, or Used by the United States), involving WILLIAM LEWIS WEAVER, II since June 1, 2017, including, for each user ID identified on Attachment A, information pertaining to the following matters:

a.    Records and information relating to threats to injure federal officials or employees, federal law enforcement officers, or local law enforcement officers, including officials or employees who work at or otherwise are associated with the Central Intelligence Agency ("CIA"), the National Security Agency ("NSA"), and the U.S. Department of State ("State Department);

b.    Records and information relating to threats to destroy property owned or controlled by the U.S. government, including the CIA, NSA, and the State Department;

c.    Records and information relating to threats to use explosives at properties owned or controlled by the U.S. government, including the CIA, NSA, and State Department;

d.    Records and information relating to communications with other Twitter users

regarding plans, attempts, or threats to injure federal official or employees, federal

law enforcement officers, or local law enforcement officers, to destroy property

owned or controlled by the U.S. government, or to use explosives at properties

owned or controlled by the U.S. government;

e.     Records and information relating to preparatory steps taken (either alone or in

coordination with others) to injure federal official or employees, federal law

enforcement officers, or local law enforcement officers, to destroy property

owned or controlled by the U.S. government, or to use explosives at properties

owned or controlled by the U.S. government;

f.     Records and information indicating how and when the Twitter account was

accessed or used, to determine the chronological and geographic context of

account access, use, and events relating to the crime under investigation and to the

Twitter account owner;

g.     Records and information indicating the Twitter account owner's state of mind as

it relates to the crime under investigation;

h.     Records and information relating to the identity of the person(s) who created or

used the user ID, including records that help reveal the whereabouts of such

person(s).

i.     Records and information relating to the identity of person(s) who communicated

with the user ID about matters relating to threats against (or attempts or plans to

injure or destroy) federal official or employees, federal law enforcement officers,

local law enforcement officers, or property owned or controlled by the U.S.

government, including records that help reveal the whereabouts of such persons.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Twitter, Inc. ("Twitter"), and my official title is _____. I am a custodian of records for Twitter. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Twitter, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Twitter; and

c.      such records were made by Twitter as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                            Signature



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWITTER PROFILE WITH USERNAME @WILLWEAVER2 AT HTTPS://TWITTER.COM/WILLWEAVER2 THAT IS STORED AT PREMISES CONTROLLED BY TWITTER | Case No. 1:17-SW-604 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Sarah Thaden, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain Twitter account that is stored at premises owned,

maintained, controlled, or operated by Twitter Inc. ("Twitter"), a social-networking company

headquartered in San Francisco, California. The information to be searched is described in the

following paragraphs and in Attachment A. This Affidavit is made in support of an application

for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require

Twitter to disclose to the government records and other information in its possession, pertaining

to the subscriber or customer associated with the Twitter account.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have

been so employed since approximately March 2016. I am assigned to the Washington Field

Office, Northern Virginia Violent Crimes Task Force. Prior to being hired as a Special Agent

with the FBI, I was a police officer with the Charlottesville Police Department and was so employed from approximately July 2011 to February 2016.

3.      I am a graduate of the FBI Basic Field Training Course in Quantico, Virginia, and the Basic Law Enforcement Training Course at the Central Shenandoah Criminal Justice Training Academy in Weyers Cave, Virginia. I have received formal training in the investigation of violent crimes, including specialized training in forensic evidence collection. I have received training regarding computer crimes and have participated in the execution of search warrants involving electronic evidence. I have a graduate degree in Linguistics, focusing on Forensic and Sociolinguistics. I have investigated or assisted in the investigation of a number of cases involving violent criminal activity and crimes against persons and property. I have been a sworn law enforcement officer during all times herein.

4.      The facts and information contained in this Affidavit are based upon my training and experience, participation in federal investigations, personal knowledge, and observations during the course of this investigation, as well as the observations of other agents involved in this investigation. All observations not personally made by me were related to me by the individuals who made them or were conveyed to me by my review of records, documents, and other physical evidence obtained during the course of this investigation. This Affidavit contains information necessary to support probable cause and is not intended to include each and every fact and matter observed by me or known to the government.

5.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that WILLIAM LEWIS WEAVER, II, committed numerous violations of federal law, including the transmission of interstate threats involving explosives, in violation of 18 U.S.C. § 844(e); the interstate communication of threats to injure, in violation of

2

18 U.S.C. § 875(c); the conveyance of false information and hoaxes, in violation of 18 U.S.C. § 1038; and threatening the use of a weapon of mass destruction against a person or property within the United States or against property that is owned, leased, or used by the United States, in violation of 18 U.S.C. § 2332(a). There also is probable cause to search the information described in Attachment A for evidence, fruits, or instrumentalities of these crimes, as described in Attachment B.

## RELEVANT STATUTES

6.      Based on my training and experience, and discussions with federal prosecutors assigned to this investigation, I have learned that Title 18, U.S. Code, Section 844(e) makes it a federal crime to use the telephone or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully make any threat, or maliciously convey false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive.

7.      I also have learned through my training and experience and discussions with federal prosecutors assigned to this investigation that Title 18, U.S. Code, Section 875(c) makes it a federal crime to transmit, in interstate commerce, communications which contained threats to injure the person of another.

8.      Moreover, based on my training and experience, and discussions with federal prosecutors assigned to this investigation, I have learned that Title 18, U.S. Code, Section 1038 makes it a federal crime to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10,

3

11B, 39, 40, 44, 111, or 113B of Title 18. I also know that 18 U.S.C. § 844 is within chapter 40

of Title 18, and 18 U.S.C. § 2332a is within chapter 113B of Title 18.

9.      I also have learned through my training and experience and discussions with

federal prosecutors assigned to this investigation that Title 18, U.S. Code, Section 2332a makes

it a federal crime to threaten or attempt or conspire to use a weapon of mass destruction against

any property that is owned, leased, or used by the United States or by any department or agency

of the United States, or against any person or property within the United States when (a) any

facility of interstate or foreign commerce is used in furtherance of the offense; (b) such property

is used in interstate or foreign commerce or in an activity that affects interstate or foreign

commerce; (c) any perpetrator travels in or causes another to travel in interstate or foreign

commerce in furtherance of the offense; or (d) the offense, or the results of the offense, affect

interstate or foreign commerce, or, in the case of a threat, attempt, or conspiracy, would have

affected interstate or foreign commerce.

10.     I also know that the term "weapon of mass destruction," includes "any destructive

device" as defined by Title 18, U.S. Code, Section 921, which includes "any explosive,

incendiary, or poison gas bomb."

### PROBABLE CAUSE

11.     The FBI currently is investigating WEAVER in connection with threatening

communications posted by the Twitter account @WillWeaver2. From my training and

experience, I know that a Twitter user's posts, which are known as "tweets," may be viewed on

the Twitter page associated with the user. In the case of @WillWeaver2, I was able to review

@WillWeaver2's tweets by visiting the Twitter page associated with @WillWeaver2, which was

4

publically accessible on the Internet at https://twitter.com/willweaver2 until on or about

September 16, 2017, at which time it appears Twitter suspended the account.

12.     Prior to the suspension of the account, I reviewed a number of @WillWeaver2's

tweets, which are discussed in further detail below.  I also observed that @WillWeaver2's

Twitter page displayed information that the account user had inputted for public display.

Specifically, the page provided a link to a website with the domain name "william-weaver.com,"

and the page indicated that the user of the account was based in "NOVA in VA."  From training

and experience, I know that NOVA and VA are common acronyms for Northern Virginia and

Virginia, respectively.

**A.     Background Information on Weaver**

13.     A review of a law enforcement database indicates that WEAVER is a 36-year-old

male who resides at a house located in Herndon, Virginia, within the Eastern District of Virginia.

As discussed further below, on or about September 15, 2017, WEAVER attempted to purchase a

shotgun and ammunition from a store located in Sterling, Virginia, within the Eastern District of

Virginia.  Records obtained from this store indicate that WEAVER disclosed to the store that the

Herndon, Virginia residence was his address.  Accordingly, I will herein refer to the Herndon,

Virginia residence as "WEAVER'S RESIDENCE."

14.     According to the U.S. Department of State, on or about February 15, 2016,

WEAVER submitted a passport application to the State Department.  Then, approximately a year

later, on or about February 6, 2017, WEAVER submitted another passport application to the

State Department.  The State Department has indicated that both applications were denied.

**B.     Law Enforcement's Interactions with WEAVER in June 2017**

15.     Based on conversations with another law enforcement partner, and information relayed to me from documents received by the CIA's police department, which has law enforcement authority with respect to its facilities, I know that on or before June 17, 2017, @WillWeaver2 posted at least one tweet that was directed at the CIA and the National Security Agency.  The communication(s) was/were concerning in nature and resulted in the City of Herndon Police Department conducting a welfare check of WEAVER at his residence in Herndon, Virginia.  During this meeting, WEAVER did not deny that he owns or controls @WillWeaver2, indicated that he had been intoxicated when he posted the tweet(s) in question, and did not intend to hurt anyone unless they came to his house.

**C.     Law Enforcement's Interactions with WEAVER in September 2017**

16.     A review of the tweets posted on @WillWeaver2's Twitter page indicate that on or about August 29, 2017, @WillWeaver2 posted the following tweet regarding the CIA: "Logic continues to dictate that bombing the cia , and shotgunning them as they lineup outside the gate at work in the morn is my conclusion."  Later on the same day, @WillWeaver2 posted another tweet that, given its context, also appeared to concern the CIA:  "They all line up at those gates like ducks at the county fair shooting gallery, haha.All that evil just a few shotgun blasts away from gone."

17.     Also, I have seen a tweet by @WillWeaver2 that was posted on or about August 29, 2017, and appears to have been directed at the State Department.  It read as follows: "@StateDept You have about 2 weeks 2 get my passport 2 me before the devices set off and the shotgun blasts start. Tick-tock goes the clock."  I know that @StateDept is the official Twitter account handle for the U.S. State Department.

6

18.     On or about September 14, 2017, law enforcement officers with the City of Herndon Police Department and FBI Task Force Officers, one of whom is a Diplomatic Security Special Agent for the Department of State, made contact with WEAVER at his residence in Herndon, Virginia. The purpose of the contact was to explain to WEAVER that the prior issue with his application for a passport was believed to have been resolved and he could attempt to apply again.

19.     During the September 14, 2017 meeting, WEAVER was made aware that the Task Force Officer who was present at the door of the residence was a federal agent. WEAVER made several statements of note during this encounter, including the following: something to the effect of "[I]t's almost there. You are going to see;" "we are passed the courts;" and "I am on a set schedule for some events coming up that your folks should know about. I'm not who I once was."

20.     My review of @WillWeaver2 indicates that, on or about September 15, 2017, @WillWeaver2, whose location is listed as "NOVA in VA," posted the following posts:

    a.     "Police rolled up on my house at 9:30pm, banging on my door. Another @StateDept clown w/ them, but they seemed to have forgotten my passport."

    b.     "Talking about how I could pay them and shit all over again for my passport. Talking lies in front of the officer, again. Fake ass warrants."

    c.     "Now I warned you cocksucking assbags @StateDept to get me my shit that's owned to me, yet you insult me by trying to strongarm me."

    d.     "A reminder: To anyone who attempts to disarm me, or detain me, I will attempt to kill w/ all that is me and any of your nearby associates."

e.    "So the cops roll up on my pad trying to intimidate me, and failed. So I just rolled up on their HQ and told them to back the fuck off."

21.    According to City of Herndon Police Department, on or about September 15, 2017, WEAVER appeared in person at the City of Herndon Police Department and said something to the effect that he did not have any issues with them.

22.    My review of @WillWeaver2 indicates that on or about September 15, 2017 the following tweets were posted:

a.    "I don't care if you're cia, nsa, police, military, nutty christians. If u fuck with me,I will find you and skull fuck each & every 1 of you."

b.    "And to clarify, when the police came over to start shot, they were antagonizing, flashlight in my eyes, making threats. I didn't back down."

c.    "Today's going to be real interesting. I'm charged up, and have a lot of work to get to. Do not come to my house unless you're looking to die."

d.    "It might be best to assume that all are enemies at this point."

23.    It also should be noted that a review of @WillWeaver2's tweets revealed a posting that included a uniform resource link, or "URL," to a Pastebin page. I know from training and experience that Pastebin is a popular website for storing and sharing text. The Pastebin URL within @WillWeaver2's tweets links to a lengthy narrative that includes personal or biographical information indicating that WEAVER was the author of the narrative. This narrative also indicates that WEAVER has attempted to build explosives at some point in the past and has received training on building explosives.

8

**D.     WEAVER's Attempted Purchase of a Firearm**

24.     Based on information received from a store located in Sterling, Virginia, which is within the Eastern District of Virginia, WEAVER went to the store in person on or about September 15, 2017, and attempted to purchase a shotgun and ammunition.  WEAVER reportedly paid for the weapon and ammunition at that time but was told by employees that he was unable to take the weapon or ammunition home immediately.

25.     During this attempted transaction, WEAVER completed paperwork relating to the purchase of the shotgun and ammunition, including a customer order form, in which he listed the Herndon, Virginia residence as his address.  WEAVER reportedly advised that he would return on or about September 16, 2017, to retrieve the weapon and ammunition.

26.     My review of @WillWeaver2 indicates on or about September 15, 2017, the following tweets were posted:

a.     "I tried to buy a shotgun for home defence. VA state police put it on delay. Can't trust police anymore. If denied Will get another way."

b.     "Talking to other nations to help me escape this now hellhole. We'll see, need gun first for prorection."

27.     Based on my training and experience, I know that tweets are posted on Twitter via an electronic device, such as a cellular telephone or computer, with an Internet connection. Based on information received from a representative of Twitter, I know that a tweet must be routed through one or more of Twitter's computer servers in order to be posted and that all of Twitter's computer servers are located outside of the state of Virginia.  Accordingly, I submit there is reason to believe that the tweets identified above were transmitted in interstate commerce.

### E.    Statements Made by WEAVER on or about September 16, 2017

28.    On or about September 16, 2017, the FBI executed a federal arrest warrant, which had been issued by a magistrate judge of the Eastern District of Virginia, at WEAVER's residence in Herndon, Virginia.

29.    WEAVER waived his *Miranda* rights and agreed to speak with the FBI.  He made numerous statements, including the following:

a.    When asked about the threatening tweet, WEAVER apologized and blamed his consumption of alcohol.  Specifically, he stated:  "I apologize but I become paranoid. . . . I'm sorry, I get worked up . . . ." and "I'm sorry I got drunk on Twitter and said whatever."

b.    WEAVER also admitted to purchasing a shotgun, alternately claiming he wanted the firearm for self-defense and "because the officers came to my door."

c.    WEAVER disclosed that he had previously surveilled the Central Intelligence Agency ("CIA"), explaining that he "did it for recon to educate on how to get the bad people."

### F.    Additional Facts Supporting Probable Cause

30.    Records obtained from Twitter indicate that @WillWeaver2 was created using email address will.w@truehitdesigns.com.  Twitter's records also indicate that the mobile device associated with @WillWeaver2 has a telephone number of 484-767-1610.  According to the paperwork WEAVER completed during his attempted purchase of a firearm on or about September 15, 2017, 484-767-1610 is WEAVER's telephone number.

31.    Records from Twitter also indicate that several Internet Protocol ("IP") addresses have been used to log into and/or create @WillWeaver2, including:  191.238.8.154;

10

191.238.9.94; 191.238.9.80; 208.54.35.182; and 64.121.165.36. Using an open source tool, law enforcement has determined that 108.45.77.58, which was used to log in to @WillWeaver2 on or about September 14 and 15, 2017, is an IP address controlled by Verizon Internet Services. Records obtained from Verizon indicate that 108.45.77.58 is associated with a Verizon subscriber named "William Weaver" and a residence located in Herndon, Virginia.

32.     On or about September 16, 2017, prior to the suspension of @WillWeaver2, law enforcement submitted an initial preservation request to Twitter pursuant to 18 U.S.C. § 2703(f). The request asked Twitter to preserve all stored communications, records, and other evidence associated with @WillWeaver2 for a period of 90 days.

## BACKGROUND ON TWITTER

33.     Twitter owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com. Twitter allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and location information. Twitter also permits users create and read 140-character messages called "tweets," and to restrict their "tweets" to individuals whom they approve. These features are described in more detail below.

34.     Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account. The Twitter user may also change this username, password, and name without having to open a new Twitter account.

35.     Twitter asks users to provide basic identity and contact information, either during the registration process or thereafter. This information may include the user's full name, e-mail addresses, physical address (including city, state, and zip code), date of birth, gender, hometown,

11

occupation, and other personal identifiers. For each user, Twitter may retain information about the date and time at which the user's profile was created, the date and time at which the account was created, and the IP address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Twitter account.

36.     A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page. In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

37.     Twitter also keeps IP logs for each user. These logs contain information about the user's logins to Twitter including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.

38.     As discussed above, Twitter users can use their Twitter accounts to post "tweets" of 140 characters or fewer. Each tweet includes a timestamp that displays when the tweet was posted to Twitter. Twitter users can also "favorite," "retweet," or reply to the tweets of other users. In addition, when a tweet includes a Twitter username, often preceded by the @ sign, Twitter designates that tweet a "mention" of the identified user. In the "Connect" tab for each account, Twitter provides the user with a list of other users who have "favorited" or "retweeted" the user's own tweets, as well as a list of all tweets that include the user's username (i.e., a list of all "mentions" and "replies" for that username).

39.     Twitter users can include photographs or images in their Tweets. Each Twitter account also is provided a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.

12

40.     Twitter users can also opt to include location data in their Tweets, which will reveal the users' locations at the time they post each tweet. This "Tweet With Location" function is off by default, so Twitter users must opt in to the service. In addition, Twitter users may delete their past location data.

41.     When Twitter users want to post a tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co. This link service measures how many times a link has been clicked.

42.     A Twitter user can "follow" other Twitter users, which means subscribing to those users' tweets and site updates. Each user profile page includes a list of the people who are following that user (*i.e.*, the user's "followers" list) and a list of people whom that user follows (*i.e.*, the user's "following" list). Twitters users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their tweets are visible only to the people whom they approve, rather than to the public (which is the default setting). A Twitter user can also group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and who those people follow.

43.     In addition to posting tweets, a Twitter user can also send Direct Messages ("DMs") to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users. As of January 2012, Twitter displayed only the last 100 DMs for a particular user, but older DMs are stored on Twitter's database.

13

44.     Twitter users can configure the settings for their Twitter accounts in numerous ways.  For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone.

45.     Twitter includes a search function that enables its users to search all public tweets for keywords, usernames, or subject, among other things.  A Twitter user may save up to 25 past searches.

46.     Twitter users can connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles.

47.     If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

48.     In some cases, Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints.  Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.  Twitter may also suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

49.     As explained herein, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, a

14

Twitter user's account information, IP log, stored electronic communications, and other data

retained by Twitter, can indicate who has used or controlled the Twitter account. This "user

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a

search warrant at a residence. For example, profile contact information, communications,

"tweets" (status updates) and "tweeted" photos (and the data associated with the foregoing, such

as date and time) may be evidence of who used or controlled the Twitter account at a relevant

time. Further, Twitter account activity can show how and when the account was accessed or

used. For example, as described herein, Twitter logs the Internet Protocol (IP) addresses from

which users access their accounts along with the time and date. By determining the physical

location associated with the logged IP addresses, investigators can understand the chronological

and geographic context of the account access and use relating to the crime under investigation.

Such information allows investigators to understand the geographic and chronological context of

Twitter access, use, and events relating to the crime under investigation. Additionally, Twitter

builds geo-location into some of its services. If enabled by the user, physical location is

automatically added to "tweeted" communications. This geographic and timeline information

may tend to either inculpate or exculpate the Twitter account owner. Last, Twitter account

activity may provide relevant insight into the Twitter account owner's state of mind as it relates

to the offense under investigation. For example, information on the Twitter account may

indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a criminal

plan) or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal

evidence from law enforcement).

  50.  Therefore, the computers of Twitter are likely to contain all the material described

above, including stored electronic communications and information concerning subscribers and

their use of Twitter, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

51.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Twitter to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

52.     Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

53.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Sarah Thaden, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on this 18th day of September, 2017:

/s/
Ivan D. Davis
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Twitter profile with username @WILLWEAVER2 at HTTPS://TWITTER.COM/WILLWEAVER2 that is stored at premises owned, maintained, controlled, or operated by Twitter, Inc. ("Twitter"), a company headquartered in San Francisco, California.

## ATTACHMENT B

### Particular Things to be Seized

I.     **Information to be disclosed by Twitter, Inc. ("Twitter")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Twitter, including any messages, records, files, logs, or information that have been deleted but are still available to Twitter, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Twitter is required to disclose the following information to the government for each account listed in Attachment A:

a.     All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b.     All past and current usernames, account passwords, and names associated with the account;

c.     The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.     All IP logs and other documents showing the IP address, date, and time of each login to the account;

e.     All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

f.     All "Tweets" and Direct Messages sent, received, "favorited," or retweeted by the account, and all photographs or images included in those Tweets and Direct Messages;

g.      All information from the "Connect" tab for the account, including all lists of Twitter users who have favorited or retweeted Tweets posted by the account, as well as a list of all Tweets that include the username associated with the account (*i.e.*, "mentions" or "replies");

h.      All photographs and images in the user gallery for the account;

i.      All location data associated with the account, including all information collected by the "Tweet With Location" service;

j.      All information about the account's use of Twitter's link service, including all longer website links that were shortened by the service, all resulting shortened links, and all information about the number of times that a link posted by the account was clicked;

k.      All data and information that has been deleted by the user;

l.      A list of all of the people that the user follows on Twitter and all people who are following the user (*i.e.*, the user's "following" list and "followers" list);

m.      A list of all users that the account has "unfollowed" or blocked;

n.      All "lists" created by the account;

o.      All information on the "Who to Follow" list for the account;

p.      All privacy and account settings;

q.      All records of Twitter searches performed by the account, including all past searches saved by the account;

r.      All information about connections between the account and third-party websites and applications;

s.      All records pertaining to communications between Twitter and any person

regarding the user or the user's Twitter account, including contacts with support

services, and all records of actions taken, including suspensions of the account.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and

instrumentalities of violations of 18 U.S.C. § 844(e) (Transmission of Interstate Threats

Involving Explosives),  18 U.S.C. § 875(c) (Interstate Communication of Threats to Injure); 18

U.S.C. § 1038 (Conveyance of False Information and Hoaxes); and 18 U.S.C. § 2332(a)

(Threatening Use of a Weapon of Mass Destruction Against a Person or Property within the

United States or against Property that is Owned, Leased, or Used by the United States), involving

WILLIAM LEWIS WEAVER, II since June 1, 2017, including, for each user ID identified on

Attachment A, information pertaining to the following matters:

a.    Records and information relating to threats to injure federal officials or

employees, federal law enforcement officers, or local law enforcement officers,

including officials or employees who work at or otherwise are associated with the

Central Intelligence Agency ("CIA"), the National Security Agency ("NSA"), and

the U.S. Department of State ("State Department);

b.    Records and information relating to threats to destroy property owned or

controlled by the U.S. government, including the CIA, NSA, and the State

Department;

c.    Records and information relating to threats to use explosives at properties owned

or controlled by the U.S. government, including the CIA, NSA, and State

Department;

d.    Records and information relating to communications with other Twitter users

regarding plans, attempts, or threats to injure federal official or employees, federal law enforcement officers, or local law enforcement officers, to destroy property owned or controlled by the U.S. government, or to use explosives at properties owned or controlled by the U.S. government;

e.      Records and information relating to preparatory steps taken (either alone or in coordination with others) to injure federal official or employees, federal law enforcement officers, or local law enforcement officers, to destroy property owned or controlled by the U.S. government, or to use explosives at properties owned or controlled by the U.S. government;

f.      Records and information indicating how and when the Twitter account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Twitter account owner;

g.      Records and information indicating the Twitter account owner's state of mind as it relates to the crime under investigation;

h.      Records and information relating to the identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

i.      Records and information relating to the identity of person(s) who communicated with the user ID about matters relating to threats against (or attempts or plans to injure or destroy) federal official or employees, federal law enforcement officers, local law enforcement officers, or property owned or controlled by the U.S. government, including records that help reveal the whereabouts of such persons.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Twitter, Inc. ("Twitter"), and my official title is _____. I am a custodian of records for Twitter. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Twitter, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Twitter; and

c.      such records were made by Twitter as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                                     Signature